**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Bruns, | No. CV-22-00465-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| Tucson Used Auto Sales, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Stephanie Bruns's Motion for Default Judgment Against Defendant Tucson Used Auto Sales. (Doc. 70.) For the following reasons, the Court will grant Plaintiff's Motion and enter judgment against Defendant Tucson Used Auto Sales.

## I.    Background

On October 5, 2022, Plaintiff Stephanie Bruns filed a Complaint against Defendants Tucson Used Auto Sales, Dur Saleh, and Hardik Choudhary, alleging Defendant Tucson Used Auto Sales is liable for assault, battery, and the intentional infliction of emotional distress (IED); violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C., *et seq.*; the Arizona Minimum Wage Act ("AMWA"), A.R.S. § 23-362, *et seq.*; the Arizona Wage Statute, A.R.S. § 23-353, *et seq.*; and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Doc. 1.)

Defendant Tucson Used Auto Sales filed an answer on December 9, 2022. (Doc. 9.) On September 25, 2023, counsel for Defendant filed a second motion to withdraw. (Doc.

44.) The Court granted counsel's request and gave Tucson Used Auto Sales until October 31, 2023 to retain new counsel. (Doc. 45.) The Court granted Defendant's two request for more time, extending the deadline to December 1, 2023, and then to January 16, 2024, but warning Defendant that another extension would not be granted. (Docs. 47, 49.) On January 10, 2024, Defendant filed for another extension to find counsel, which the Court denied. (Docs. 50, 53.)

On January 25, 2024, Plaintiff filed a Motion to Strike Defendant Tucson Used Auto Sales' Answer, (Doc. 56), which the Court granted. (Doc. 59.) On March 14, 2024, Plaintiff filed an Application for Entry of Default against Defendant. (Doc. 60.) On March 15, 2024, the Clerk of the Court entered default against Defendant pursuant to Fed. R. Civ. P. 55(a). (Doc. 61.) On April 17, 2024, the Court granted Plaintiff and Defendant Choudhary's motion to dismiss Defendants Hardik Choudhary and Defendant Dur Saleh, in their individual capacities. (Doc. 69.)

## II. Jurisdiction

Federal courts may only adjudicate cases over which they have subject-matter jurisdiction—basically, those cases involving a federal question or diversity of citizenship. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *see also* 28 U.S.C. § 1331. Plaintiff alleges that Defendants violated the FLSA, thus the Court has federal question jurisdiction. Plaintiff alleges the violation occurred in 2022, so her Complaint is timely. Any action for unpaid minimum wages or liquidated damages must be "commenced within two years after the cause of action accrued." *See* 29 U.S.C. § 255(a). Here, Defendant Tucson Used Auto Sales' primary place of business is in Tucson, Arizona, and therefore, the Court has personal jurisdiction over the defaulting party.

## III. Legal Standard

Pursuant to Rule 55(a), default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.

Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

**IV.    Discussion**

**A.    First *Eitel* Factor**

The first factor—the possibility of prejudice to Plaintiff—weighs in favor of granting default judgment. Defendant's counsel withdrew on September 28, 2023. (Doc. 45), and since that time Defendant has failed to retain counsel in this matter. As a business entity, Tucson Used Auto Sales may only proceed through licensed counsel. *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993). Given Defendant's failing to obtain counsel for six months, Defendant has failed to participate in the litigation. If the Court denies the motion for default judgment, Plaintiff would be without recourse for recovery from Defendant. *See PepsiCo*, 238 F. Supp. 2d at 1177.

**B.    Second and Third *Eitel* Factors**

The second and third factors "are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *5 (citation omitted). When the complaint sufficiently states a claim for relief, these factors favor a default judgment.  *See Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978).  "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Zekelman*, 2020 WL 1495210, at *5 (citation omitted). Here, both factors weigh in favor of granting default judgment.

In Counts 1 and 2, Plaintiff alleges that Defendant Tucson Used Auto Sales violated Title VII of the Civil Rights Act of 1964 by committing sexual discrimination and retaliation. (Doc. 1 at 10-11.) To prevail on Count 1, a hostile work environment claim under Title VII, plaintiff must show that: (1) she was subjected to verbal or physical conduct of a sexual nature, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the environment was both subjectively and objectively perceived as abusive. *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). The Complaint sufficiently alleges that Plaintiff was subjected to verbal and physical conduct of a sexual nature; the conduct was unwelcome; the conduct was pervasive and altered the conditions of her employment, and the conduct created an objectively and subjectively abusive working environment. (Doc. 1 at 10-11.)

To prevail on Count 2, a retaliation claim under Title VII, Plaintiff must show "1) that [she] acted to protect [her] Title VII rights; 2) that an adverse employment action was thereafter taken against [her]; and 3) that a causal link existed between the two events." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004). Here, the Complaint sufficiently alleges that Plaintiff acted to protect her rights by reporting the sexual harassment and she suffered suspension and constructive discharge as a direct result of her report. (Doc. 1 at 11.)

In Counts 3, 4, and 5, Plaintiff alleges that Defendant is vicariously liable for various state torts that she suffered during her employment. To prevail on Count 3, assault, Plaintiff must show (1) Defendant intended to cause harm and offensive contact with Plaintiff and (2) Plaintiff was placed in "imminent apprehension of the contact." *Gallegos v. Flores*, No. 1 CA-CV 10-0178, 2012 Ariz. App. Unpub. LEXIS 83, at *10 (Ct. App. Jan. 24, 2012) (citing Restatement (Second) of Torts § 21 (1965)). Here, the Complaint sufficiently alleges that Defendant Choudhary intended to cause offensive contact with Plaintiff, and that she was placed in imminent apprehension of the contact. (Doc. 1 at 12.)

To prevail on Count 4, battery, Plaintiff must show that Defendant intentionally

caused a harmful or offensive contact with Plaintiff to occur. *Johnson v. Pankratz*, 2 P.3d 1266, 1268 (Ariz. Ct. App. 2000) (citing Restatement (Second) of Torts § 13 (1965)). The Complaint sufficiently alleges that Defendant Choudhary intentionally caused offensive contact with Plaintiff. (Doc. 4 at 13.)

To prevail on the IED claim in Count 5, Plaintiff must demonstrate that (1) Defendants engaged in "extreme and outrageous conduct"; (2) Defendants either "intended to cause emotional distress or [had] reckless disregard of the near certainty that such distress will result from [Defendants'] conduct"; and (3) Plaintiff suffered "severe emotional distress as a result of [Defendants'] conduct." *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007). Here, the Complaint sufficiently alleges that Defendant Choudhary engaged in extreme and outrageous conduct, with reckless disregard of the near certainty that such distress would result. (Doc. 1 at 13-14.)

To prevail on Counts 3, 4, and 5 against Tucson Auto Sales, Plaintiff must show that Tucson Used Auto Sales ratified supervisor Choudhary's actions such that "a reasonable juror could conclude that [the employer] knew or should have known that [the supervisor] had created a sexually offensive working environment and thus was capable of sexual assault." *Smith v. American Exp. Travel Related Servs. Co.*, 179 Ariz. 131, 137-38 (Ct. App. 1994). Here, Plaintiff sufficiently alleges that Tucson Used Auto sales ratified Choudhary's actions by having actual or constructive notice that Choudhary was using his apparent authority to accomplish the wrongful acts and was acting within the scope of his employment. (Doc. 1 at 12.)

In Count 6, Plaintiff alleges that Defendant Tucson Used Auto Sales failed to pay her the statutorily required minimum wage. (Doc. 1 at 14-15.) The FLSA regulates the wage, hour, and working conditions of American employees and sets the federal minimum wage at $7.25/hour. *See* 29 U.S.C. § 206(a)(1)(C). Similarly, the Arizona Wage Act ("AWA"), A.R.S. § 23-350, *et seq.*, establishes the standards for wage payments to employees in Arizona, and the AWMA establishes the minimum wage in Arizona at $12/hour. A.R.S. § 23-363(A)(4). To prevail on a minimum wage claim, a plaintiff "must

establish three elements: (1) [she] was an employee of Defendants; (2) [she] was covered under the FLSA, and (3) Defendants failed to pay [her the] minimum wage." *Leyva v. Avila*, 634 F. Supp. 3d 670, 675 (D. Ariz. 2022) (quoting *Smith v. Nov. Bar N Grill LLC*, 441 F. Supp. 3d 830, 834 (D. Ariz. 2020) (citing 29 U.S.C. §§ 206(a), 207(a))). Here, Plaintiff sufficiently alleges those elements. Plaintiff was Defendant's employee. Plaintiff initially worked for Defendant as an Internet Sales Manager; Defendant agreed to pay her a "$2,000 Flat Salary a month, $30 per sold, funded, closed units, $.75 cents [sic] per lead log." Plaintiff worked approximately 77 hours per week, and Defendant failed to pay Plaintiff her salary, reduced her commission rate multiple times, and compensated her far less than minimum wage or not at all. (Doc. 1 at 1-5, 9-10, 15-17.)

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Taken as true, the factual allegations establish that: (1) Defendant violated Title VII by committing sexual discrimination and retaliated against Plaintiff when she reported it; (2) Defendant is vicariously liable for the torts of assault, battery, and IED; and (3) Defendant violated the FLSA and AMWA by failing to pay Plaintiff the minimum wages she was owed for the work she performed.

### C.   **Fourth *Eitel* Factor**

Under the fourth factor, this Court "must consider the amount of money at stake in relation to the seriousness of [Defendants'] conduct." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citation omitted). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Zekelman*, 2020 WL 1495210, at *4 (citation omitted).

Plaintiff requests $123,136.85 in total damages. (Doc. 70 at 5.) Plaintiff has directly tailored the damages sought to the Defendant's misconduct. (*Id.*) Plaintiff seeks $50,000 in compensatory damages for her tort claims of intentional infliction of emotional distress, assault, and battery; and $35,000 in compensatory damages for her Title VII claims. (Doc. 70 at 7-9.) Plaintiff may recover damages for emotional distress and general tort damages

for the following claims: sex discrimination, retaliation, assault, battery, and intentional infliction of emotional distress. *See* 42 U.S.C. § 1981a; 42 U.S.C. § 2000e-5(g). Plaintiff's Title VII claims have a statutory cap for compensatory and punitive damages of $50,000.00. 42 U.S.C. § 1981a(b)(3); 42 U.S.C. § 1981a(b)(3)(A). However, where a plaintiff's claims include general tort damages, a plaintiff's total compensatory damages award is not limited by Title VII's statutory cap. *See Pavon v. Swift Transp. Co.*, 192 F.3d 902, 910 (9th Cir. 1999).

Plaintiff seeks an additional $15,000 in punitive damages for being subjected to sexual harassment under the supervision of her employer, Tucson Used Auto Sales. (Doc. 70 at 9-10.) In cases of intentional discrimination in employment, punitive damages may be awarded where the plaintiff demonstrates the defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of [the plaintiff]." 42 U.S.C. § 1981a(b)(1).

Plaintiff also seeks $9,705.85 in back-pay. (Doc. 70 at 10.) Because she began earning mitigating wages in March 2022, Plaintiff has calculated back pay from the date of her constructive discharge. (*Id*. at 10.)

Plaintiff seeks unpaid wages in the estimated amount of $4,477. (*Id*.) The FLSA provides for double damages, 29 U.S.C. § 216(b); therefore, Plaintiff is entitled to $8,954 for federal minimum wage liquidated damages. (*Id*.) The AMWA provides for treble damages, A.R.S. § 23-364(G); therefore, Plaintiff is entitled to $13,431 for Arizona minimum wage liquidated damages. (*Id*. at 10-11.) Because the Arizona damages engulf the federal damages, Plaintiff seeks the greater amount of $13,431, exclusive of attorneys' fees and costs.[1] (*Id*. at 10-11.)

The requested damages are not unreasonable given the severity of Defendant's conduct, and, therefore, this factor weighs in favor of default judgment.

**D.     Fifth, Sixth, and Seventh *Eitel* Factors**

"In cases...in which Defendants have not participated in the litigation at all,

---

[1]Plaintiff's counsel intends to file a separate motion for attorneys' fees. (Doc. 70 at 11.)

the…fifth, sixth, and seventh factors are easily addressed." *Zekelman,* 2020 WL 1495210, at *3.  The fifth and sixth factors—the   possibility  of a dispute concerning the material facts and whether defendant's default was the product of excusable neglect—weigh in favor of default judgment. Due to Defendant's failure to obtain counsel well past the extended deadline, and Defendant's failure to otherwise participate in the litigation, there is no dispute over material facts, and it is evident that default is not due to excusable neglect.

The seventh factor—public policy favoring decisions on the merits—generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.  Indeed, "the default mechanism is necessary to deal with wholly unresponsive parties who otherwise could cause the justice system to grind to a halt.  Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." *Ariz. Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 816 (D. Ariz. 2021) (quoting 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 55, at 123–24 (2021) (footnote omitted)).

## V.     Conclusion

Collectively, the *Eitel* factors weigh in favor of entry of default judgment. The undisputed facts show that Defendant employed Plaintiff and failed to pay Plaintiff the minimum wage required by law. Further, the undisputed facts show that Tucson Used Auto Sales is vicariously liable for the actions of its manager, whom assaulted and sexually harassed Plaintiff. Therefore, default judgment is appropriate, and the Court will award Plaintiff $123,136.85 in total damages, to be paid by Defendant Tucson Used Auto Sales LLC. Accordingly,

**IT IS ORDERED** Plaintiff's Motion for Default Judgment Against Tucson Used Auto Sales (Doc. 70) is **granted**.

**IT IS FURTHER ORDERD** Plaintiff is awarded $123,136.85 in total damages against Defendant Tucson Used Auto Sales, including:

(1)     compensatory damages for Plaintiff's tort claims in the amount of $50,000.00;

(2)     compensatory damages for Plaintiff's Title VII claims in the amount of $35,000.00;

(3)     punitive damages for Plaintiff's Title VII claim in the amount of $15,000.00;

(4)     backpay in the amount of $9,705.85; and

(5)     trebled unpaid minimum wages of $4,477.00, in the amount of $13,431.00.

**IT IS FURTHER ORDERED** post judgment interest on the judgment of $123,136.85 shall accrue at a rate of 4.5% per annum as of August 14, 2024.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment in favor of Plaintiff accordingly.

**IT IS FURTHER ORDERED** that pursuant to Fed. R. App. P. 4(a)(1)(A), Defendant, through counsel, shall have 30 days from the entry of judgment to appeal this Court's decision.

Plaintiff must file her request for attorneys' fees and costs within fourteen days of the date of this Order, in compliance with Fed. R. Civ. P. 54 and LRCiv 54.2.

Dated this 13th day of August, 2024.

Jennifer G. Zipps
United States District Judge

- 9 -